**Suzanne DeKUYPER**

v.

**A.G. EDWARDS & SONS, INC., et al.**

Civ. No. N–85–529(EBB).

United States District Court,
D. Connecticut.

Dec. 10, 1987.

Susan Bartholomew, David Belt, Grudberg, Belt & Dow, New Haven, Conn., Richard Gelb, Gelb & Gelb, Boston, Mass., for plaintiff.

Ronald Cohen, Tyler, Cooper & Alcorn, New Haven, Conn., Kevin McCann, Tyler, Cooper & Alcorn, Hartford, Conn., for defendants.

## RULING ON A MOTION FOR RECONSIDERATION OF MOTION TO COMPEL ARBITRATION

ELLEN B. BURNS, District Judge.

### A. Background

The parties are before this court in a dispute over trading activities by defendant A.G. Edwards & Sons, Inc., in connection with the account of plaintiff Suzanne De-Kuyper. Plaintiff alleges misrepresentation and churning. Specifically, plaintiff claims causes of action under the Securities Exchange Act of 1934, the Securities Act of 1933, the Racketeer Influenced and Corrupt Organization Act and state common law and statutes. Defendant moved to compel arbitration as specified in the customer agreement between the parties. The motion was denied by this court based on the Second Circuit's holding in *Shearson/American Express v. McMahon*, 788 F.2d 94 (2d Cir.1986), which had declared that such arbitration clauses were invalid with respect to Federal Securities Act claims. Defendant filed the instant Motion for Reconsideration of their Motion to Compel Arbitration in light of the Supreme Court's reversal of the *McMahon* decision. *Shearson/American Express v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).

### B. Discussion

(1) *Arbitrability of Securities Laws Claims:*

■ When the Supreme Court decided in *McMahon* that arbitration clauses in standard customer agreements are valid, it based its holding on the fact that arbitration procedures developed over the past three decades adequately protect statutory rights. *McMahon*, 107 S.Ct. at 2338. Today the Securities and Exchange Commission (SEC) has broad supervisory powers to oversee the rules of self-regulatory organizations. It specifically approved the arbi-

tration procedures of the stock exchanges and of the National Association of Securities Dealers. *Id.* at 2341. The *McMahon* court held, therefore, that pre-dispute arbitration agreements will be enforceable since the SEC has sufficient statutory authority to ensure that the arbitration procedure is adequate to vindicate rights accruing under the Securities Exchange Act. *Id.* at 2343.

Prior precedents which held otherwise must be understood in light of their peculiar circumstances, namely, the fact that, at the time, arbitration was judged to be inadequate to protect the statutory rights created by the federal securities laws. *Id.* at 2338. *See, e.g., Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). *McMahon* declared arbitration a valid remedy for violations of the 1934 Act. In dictum the Court found that the contrary holding of *Wilko v. Swan,* supra, with respect to the 1933 Act must be reconsidered given the fact that procedures for arbitration have vastly improved since 1953. *Id.* 107 S.Ct. at 2341.

In the instant case, the plaintiff resists arbitration of both the 1934 and 1933 Act claims. A recent case from the District of California compared the nearly identical anti-waiver provisions of the two Acts —§ 14 of the 1933 Act and § 29(a) of the 1934 Act—and felt compelled to interpret *McMahon* as extending not only to the 1934 Act but to the 1933 Act as well. *Staiman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 673 F.Supp. 1009 (C.D.Cal. 1987). Judge Lew recognized that *McMahon* left unsettled the continued validity of *Wilko* with respect to 1933 Act claims. However, viewed in the context of developments since *Staiman,* his decision is persuasive.

On October 21, 1987, the SEC revoked Rule 15c2–2, which had mandated disclosure of the inapplicability of pre-dispute arbitration clauses in standard customer agreements to federal securities law claims. The rule had initially been promulgated to ensure that brokers would not mislead customers into believing that they had no remedy in court when, under the prevailing law as declared in *Wilko,* Securities Act claims were not arbitrable. When it revoked the rule, the SEC noted that, in light of *McMahon,* pre-dispute arbitration clauses are now effective with respect to 1934 Act claims. Although *McMahon* did not expressly overrule *Wilko* with respect to 1933 Act claims, the SEC pointed out that the continued vitality of that decision was severely undermined. Therefore disclosure of the inapplicability of arbitration clauses to securities law claims was no longer appropriate. Exchange Act Release No. 25034 (CCH # 84,163, pp. 88,886–87, Oct. 21, 1987).

In view of the foregoing this court considers the arbitration clause in plaintiff's standard customer agreement to be valid with respect to all claims raised.

(2) *The Disclosure Language of the Arbitration Clause:*

█ Plaintiff asserts that the express language of the customer agreement provides for the exclusion from arbitration of claims arising under federal securities laws. The clause contained in the agreement provides as follows:

ANY CONTROVERSY BETWEEN MYSELF AND YOU OR ANY OF YOUR OFFICERS, DIRECTORS, AGENTS OR EMPLOYEES, ARISING OUT OF THIS AGREEMENT OR THE PERFORMANCE OR BREACH OF THIS AGREEMENT OR ANY ACCOUNT WITH YOU, OR ANY TRANSACTION BY ME WITH OR THROUGH YOU, OR ANY OTHER CAUSE WHATSOEVER, SHALL BE SETTLED BY ARBITRATION IN ACCORDANCE WITH THE APPLICABLE STATE OR FEDERAL ARBITRATION STATUTES and in accordance with the rules of the American Arbitration Association, the National Association of Securities Dealers, Inc., or such securities exchange as I may elect.... Arbitration cannot be compelled with respect to disputes arising under federal securities laws.

Plaintiff's Memorandum in Opposition to Defendant's Motion for Reconsideration, p. 5. (emphasis in the original).

Plaintiff asserts that the last sentence in the arbitration clause contractually forbids arbitration of such issues. However, taken in the context of the arbitration clause as a whole, and given the fact that it represented a mandatory disclosure under Rule 15c2-2 of the SEC, it cannot be construed to be a separate clause of the contract. *See, e.g., Steinberg v. Illinois Co.,* 635 F.Supp. 615 (N.D.Ill.1986) (Rule 15c2-2 held procedural, providing notice to customers, rather than substantively preventing arbitration); *Shotto v. Laub,* 632 F.Supp. 516 (D.Md.1986) (same). The SEC revoked Rule 15c2-2 because the underlying reasons for its promulgation had been eroded. Exchange Act Release No. 25034 (CCH # 84,163, pp. 88,886–87, October 21, 1987). As *McMahon* points out, circumstances have changed. *See McMahon,* 107 S.Ct. at 2341. The customer, when he signs an agreement to arbitrate, substitutes one competent forum for another. *Id.* at 2339. It would defy logic to reason that the disclosure language of Rule 15c2-2 was a bargained-for term of the contract.

C. Conclusion

In light of the recent developments in the law with respect to the arbitrability of federal securities law claims,

IT IS ORDERED that all proceedings in this court are stayed pending completion of arbitration and that all claims before this court in the instant action be submitted to arbitration.

SO ORDERED.