**Wallace SEASE, et al., Plaintiffs,**

v.

**PAINEWEBBER,**
**INCORPORATED, Defendant.**

**No. 87–1368–CIV.**

United States District Court,
S.D. Florida.

March 15, 1988.

Elizabeth Koebel Clarke, Daniels & Hicks, Miami, Fla., for plaintiffs.

Bennett Falk and Keith Olin, Ruden, Barnett, McCloskey, Smith, Schuster & Russell, Miami, Fla., for defendants.

## ORDER

NESBITT, District Judge.

This cause is before the Court on Defendant PaineWebber, Incorporated's ("PaineWebber") Motion to Compel Arbitration and to Stay Action. The Court has considered the memoranda of counsel and the applicable law and being otherwise duly advised rules as follows.

## BACKGROUND

By their complaint, Plaintiffs allege that Peter Butler ("Butler"), while employed as a security analyst at PaineWebber, purchased a substantial quantity of stock in Memory Metals, Inc. ("Memory Metals"), an over-the-counter stock. The complaint alleges that Butler together with Memory Metals "insiders" engaged in a fraudulent scheme to artificially inflate the market price of the stock by disseminating false and misleading information to PaineWebber account executives to induce them and their customers to purchase and thereafter retain Memory Metals stock.

In their complaint Plaintiffs set forth causes of action for violations of Sections 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78j(b) (Count I) and § 12(2) of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. § 77l (2) (Count II), as well as pendent claims for common law fraud (Count IV) and negligence (Count V). PaineWebber seeks to compel arbitration of all the claims and a stay of the proceedings pending completion of arbitration.[1]

1. On October 21, 1987 PaineWebber filed a motion to compel arbitration of claims relating to the securities accounts of twelve (12) of the twenty-six (26) Plaintiffs in this case: Jane Atlas, Nelson Bordas, Marcia Davis, Carl Kesser, Eduardo Lemus, Milagro Lemus, Harold Schweig, Wallace Sease, Josephine Smith, Michael Solloway, Robert Stempfel, and David Woodruff. On October 19, 1987 by a supplement to the motion, PaineWebber included three additional Plaintiffs, Gerald Kohn, Ada Lowenthal, and Julio Lowenthal. At the time of this order it had not been determined whether any of the remaining Plaintiffs also have contracts with PaineWebber containing arbitration provisions. Therefore, the Motion does not extend to claims by Plaintiffs Peter Abrams, Jodye Friedman, Jonathan Friedman, Richard Gittle-

As to those Plaintiffs to which the Motion applies, all had executed written contracts in which they agreed to arbitrate any controversy which might arise between them and PaineWebber relating to their accounts.[2] In opposition to the motion to compel arbitration the Plaintiffs assert: (1) the claims alleged in the complaint are outside of the agreement; (2) the § 12(2) claims are not subject to arbitration pursuant to the United States Supreme Court's decision in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); and (3) the so-called "Davis" clause precludes arbitration of the claims arising under the federal securities laws.

### The Scope of the Arbitration Agreements

■ Plaintiffs argue that they are not obligated to arbitrate their claims because they "did not plead a cause of action for breach of contract or breach of any duty arising from any contract or is there any issue of contractual interpretation raised by their claims." They contend that their grievances arise from misrepresentation and omissions by PaineWebber's research and investment analyst, Butler, rather than from any contractual dispute.

Although the arbitration clauses in the customers' agreements differ, the pertinent parts of them are as follows:

man, Jay Levine, Marcia Levine, Terrie L. Newman, Frederick Ross, Sarah Jane Smith Stempfel, Jack Waenberg, or Margaret Woodruff.

**2.** Plaintiffs Atlas, Kesser, Sease and Stempfel signed customer agreements which provide in pertinent part:

Any controversy between us arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining of either the Arbitration Committee of the New York Stock Exchange, American Stock Exchange, National Association of Securities Dealers, or where appropriate, Chicago Board Option Exchange or Commodities Future Trading Commission....

The Customer Agreements of Bordas, Eduardo Lemus, Milagro Lemus and Solloway provide:

It is understood that the following agreement to arbitrate does not constitute a waiver of the right to seek a judicial forum where such a waiver would be void under the federal securities laws. The undersigned agrees ... that

"[a]ny controversy ... arising out of or relating to this contract or the breach thereof" (the "Atlas Clause"); [3]

"all controversies ... concerning any transaction in any account(s)" (the "Bordas clause"); [4]

"[a]ny controversy ... arising out of or relating to this agreement, breach thereof, or any account(s) ... (except any claim or relief by a public customer for which a remedy may exist pursuant to an expressed or implied right of action under the federal securities laws)" (the "Davis clause").[5]

It is clear that every "relation" and "dealing" between PaineWebber and the Plaintiffs is covered by the agreement; further, *any* "controversy" must be resolved by arbitration.

Once the court is satisfied that a contract calls for arbitration and the parties do not contest the validity of that contract, the court must give the clause a broad interpretation and refer to arbitration all disputes or controversies arising between the customer and brokerage house. *Houston General Ins. Co. v. Realex Group, N.V.*, 776 F.2d 514 (5th Cir.1985). Even if there was some doubt as to whether the customers' claims against Painewebber were related to "transactions or controversies" within the scope of the arbitration agreement,

except as inconsistent with the foregoing sentence, all controversies which may arise between the undersigned and you ... concerning any transaction in any account(s) ... shall be determined by arbitration.

The Customer Agreements of Davis, Schweig, Smith, and Woodruff provide:

Any controversy between us arising out of or relating to this agreement, breach thereof or any account(s) maintained with you (except any claim for relief by a public customer for which a remedy may exist pursuant to an expressed or implied right of action under the federal securities laws) shall be settled by arbitration....

**3.** Atlas, Kesser, Sease and Stempfel agreed to this form of arbitration.

**4.** Bordas, Eduardo Lemus, Milagro Lemus and Solloway agreed to this form of arbitration.

**5.** Davis, Schweig, Smith and Woodruff agreed to this form of arbitration.

all doubts are to be resolved in favor of arbitration. *Mitsubishi Motors Corp. v. Sole's Chrysler Plymouth Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Moses H. Cohn Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Ruby–Collins, Inc. v. City of Huntsville*, 748 F.2d 573 (11th Cir.1984). The United States Court of Appeals for the Eleventh Circuit has upheld arbitration of claims including breach of fiduciary duty, negligence, and fraud. *See Driscoll v. Smith Barney Harris Upham and Co.*, 815 F.2d 655 (11th Cir.1987); *Blumberg v. Berlin*, 678 F.2d 1068 (11th Cir.1982). A plaintiff cannot avoid broad language agreeing to arbitration by pleading a cause of action in tort. *Shearson Hayden Stone, Inc. v. Scrivener*, 671 F.2d 680 (2d Cir.1982); *Stern v. Mitsui Bussan Kaisha, Ltd.*, 385 F.2d 158 (2d Cir.1967). The court therefore finds any dispute arising from any of these accounts are arbitrable under the various customer agreements.

### The Davis Clause Permits Access to the Courts

█ Plaintiffs Davis, Schweig, Smith and Woodruff resist arbitration on another ground. They are of the position that the agreement that they signed excepts from arbitration any claim by a public customer for which a remedy may exist pursuant to an express or implied right under the federal security laws." This provision is referred to by the parties as the so-called "Davis clause." These Plaintiffs oppose arbitration on the theory that the pre-dispute agreement to which they agreed specifically excludes arbitration of claims arising under federal securities laws. On the one hand the Davis clause acknowledges arbitration as to any controversy; on the other hand it excludes "any claim ... under the federal securities laws." Provisions such as the Davis clause were previously included in brokerage contracts in order to comply with SEC Rule 15c2–2, which provides:

(a) It shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal securities laws, or to have in effect such an agreement, pursuant to which it affects transactions with or for a customer.

17 C.F.R. § 240.15c2–2 (1987).

The history of this rule has been ably recited in *Villa Garcia v. Merrill Lynch*, 833 F.2d 545 (5th Cir.1987), and *Frankel v. Shearson Lehman Brothers*, Civil Action 86–2520 (D.N.J. Oct. 30, 1987) [available on WESTLAW, 1987 WL 39934] and need not be repeated here. In summary, the language of Rule 15c2–2 was included in the Davis clause in expression of what was believed to be the controlling law, that pre-dispute arbitration agreements were unenforceable both under the 1933 and 1934 Acts because of *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

On October 15, 1987, after *McMahon*, the SEC rescinded rule 15c2–2, explaining in its comment to the rescission that it was "no longer appropriate in light of developments of case law," [6] relying on the *McMahon* decision as to the arbitrability of 1934 Act claims and its erosion of the *Wilko* rationale as to the arbitrability of 1933 Act claims. The rescission of the rule has been held to be applied retroactively. *Villa Garcia v. Merrill Lynch, supra.* For the reasons stated in *Noble v. Drexel Burnham Lambert Inc.*, 823 F.2d 849 (5th Cir. 1987), it appears there would be no manifest injustice by applying the rule retroactively as to the causes before the Court. In view of current case law and the SEC's position as to the Davis-type language in the customer agreement, Plaintiffs Davis, Schweig, Smith, and Woodruff are required to arbitrate all claims asserted by their actions.

### Arbitrability of 1933 Act Claims

█ After the recent decision of *Shearson/American Express v. McMahon*, 482

---

**6.** Rescission of the rule at 17 C.F.R. § 240.15c2–2 effective upon publication of re-scission notice in the Federal Register, 52 Fed. Reg. 39,216–17 (1987).

U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), the status of claims under the 1933 Act became a ready source of litigation. In *McMahon*, the Supreme Court refused to extend the holding of *Wilko v. Swan*, which stated that claims under the 1933 Act were not subject to arbitration, to claims arising under the 1934 Act. The Court found that the policy reasons that had supported the *Wilko* decision in 1953 were no longer compelling, but expressly declined to overrule *Wilko*. 107 S.Ct. at 2341. The state of the law, therefore, is that claims under the 1934 Act may be arbitrated under the authority of *McMahon*, but *Wilko* prohibits arbitration of claims under the 1933 Act.

The district courts that have been faced with the issue of arbitrability of 1933 Act claims are divided. Some of the courts that have ruled that because the *McMahon* court expressly declined to overrule *Wilko v. Swan*, courts may not compel arbitration of § 12(2) claims under the Securities Acts of 1933. *See McCowan v. Dean Witter Reynolds, Inc.*, 682 F.Supp. 741 (S.D.N.Y. 1987); *Alice M. Santa v. Prudential Bache Securities Inc.*, Case No. 85–6421–CIV–MARCUS (S.D.Fla., Oct. 31, 1987) [available on WESTLAW, 1987 WL 49385]; *Smith v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 700 F.Supp. 1092 (S.D.Fla. 1987); *Brick v. J.C. Bradford & Co., Inc.*, 677 F.Supp. 1251 (D.D.C.1987); and *Schultz v. Robinson–Humphrey/American Express*, 666 F.Supp. 219 (S.D.Ga.1987). Other district judges are of the mind that the *McMahon* decision so eroded *Wilko*'s rationale that the same reasoning should apply to the 1933 Act claims. *See Benoay v. E.F. Hutton Inc.*, 699 F.Supp. 1523 (S.D.Fla. 1988); *Aronson v. Dean Witter Reynolds Inc.*, 675 F.Supp. 1324 (S.D.Fla.1987); *Staiman v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 673 F.Supp. 1009 (C.D.Cal. 1987); *Rosenblum v. Drexel Burnham Lambert, Inc.*, 700 F.Supp. 874 (E.D.La. 1987).

The court is in agreement with the latter view as expressed by Judge Gonzalez in *Aronson v. Dean Witter*, 675 F.Supp. 1324.

It is this Court's position that *McMahon* so eroded *Wilko*'s rationale that (Plaintiffs) 1933 Act claims should be sent to arbitration.

In *McMahon Wilko* held the waiver of the judicial forum unenforceable because it judged arbitration inadequate to protect the substantive rights at issue. However as

*McMahon* recognized, arbitration today is capable of resolving claims of this type.

This court, reading *Wilko* in light of *McMahon* holds that *Wilko* does not impose a blanket prohibition on arbitration of § 12(2) claims.

This court therefore concludes that where the arbitration forum is adequate to protect a claim arising under the federal securities laws (and there is no allegation here that it is not), arbitration of § 12(2) claims is a logical conclusion from the language and reasoning of *McMahon*. This conclusion is also consistent with the Eleventh Circuit pre-*McMahon* decision in *Wolfe v. E.F. Hutton & Co., Inc.*, 800 F.2d 1032 (11th Cir.1986) (*en banc*) *vacated on other grounds*, — U.S. —, 107 S.Ct. 3205, 96 L.Ed.2d 692 (1987). In *Wolfe*, the Eleventh Circuit recognized similarities in the provisions of the 1933 Act and the 1934 Act and stated "[T]here is no principle ground for distinguishing between § 12(2) and § 10b clauses when it comes to arbitration." 800 F.2d at 1037. Based on that determination, and in light of the *McMahon* decision, this Court holds that claims under § 12(2) of the 1933 Act may properly be the subject of an arbitration clause in a brokerage agreement.

*Conclusion*

Accordingly, for the reasons set forth above, it is

ORDERED AND ADJUDGED as follows:

1. Defendant's motion to compel arbitration and to stay the proceedings as to the fifteen Plaintiffs named in footnote 1, page 2 herein is GRANTED. The Court orders the parties to arbitrate their 1933

Act claims, 1934 Act claims, as well as pendent state claims, in accordance with their agreements, the Federal Arbitration Act, and the *McMahon* decision.

2. All proceedings in this action shall be stayed pending completion of arbitration. *See* 9 U.S.C. § 3 (1982). The Court shall retain jurisdiction over the matter to enforce the provisions of the Federal Arbitration Act.

3. This cause being properly referrable to arbitration, all pending motions to dismiss filed by the Defendant shall be addressed in arbitration as to the affected Plaintiffs.

4. Defendant shall be responsible for filing a status report with the Court every thirty (30) days to inform the Court of the progress of the arbitration proceedings.