878 F.2d 5
 104 A.L.R.Fed. 241
 SEGURO DE SERVICIO DE SALUD DE PUERTO RICO, Plaintiff, Appellee,
v.
McAUTO SYSTEMS GROUP, INC., Defendant, Appellee (Two Cases).
Appeal of ADVANCED SYSTEM APPLICATIONS, INC., Third-Party Defendant.
SEGURO DE SERVICIO DE SALUD DE PUERTO RICO, Plaintiff, Appellant,
v.
McAUTO SYSTEMS GROUP, INC., Defendant, Appellee.
Appeal of ADVANCED SYSTEM APPLICATIONS, INC., Defendant.
SEGURO DE SERVICIO DE SALUD DE PUERTO RICO, Plaintiff, Appellant,
v.
McAUTO SYSTEMS GROUP, INC., et al., Defendants, Appellees.
 Nos. 88-1990, 88-1991, 88-2056 and 88-2057.
 United States Court of Appeals,
First Circuit.
 Heard March 2, 1989.
Decided June 20, 1989.
 
 Mark P. Ladner with whom Ann M. Parrent, Morrison & Foerster, New York City, Hector Reichard de Cardona and Lasa, Escalera & Reichard, San Juan, P.R., were on brief, for Advanced System Applications, Inc.
 Ricardo F. Casellas, San Juan, P.R., with whom Salvador Antonetti Zequeira, Santurce, P.R., Jay A. Garcia-Gregory and Fiddler, Gonzalez & Rodriguez, San Juan, P.R., were on brief, for plaintiff.
 P.B. Konrad Knake with whom Michael I. Chakansky, White & Case, New York City, Pedro Santa-Sanchez and O'Neill & Borges, Hato Rey, P.R., were on brief, for McAuto Systems Group, Inc.
 Before TORRUELLA and SELYA, Circuit Judges, and CAFFREY,* Senior District Judge.
 TORRUELLA, Circuit Judge.
 
 
 1
 Plaintiff Seguros de Servicio de Salud de Puerto Rico, Inc. (SSS) and third party defendant Advanced System Application, Inc. (ASA) appeal from an order directing the consolidation of two separate arbitrations.
 
 
 2
 SSS is a Puerto Rican corporation which provides medical and health insurance to individuals and groups in Puerto Rico. On December 13, 1985, SSS agreed to purchase a computer system, including both hardware and software, from the defendant, McAuto Systems Group, Inc. (MSGI). MSGI, a Delaware corporation with its principal place of business in New York, designs and installs computer systems for companies in the health care industry. The contract provided that the system would be installed and ready for operation by January 2, 1987. The contract also provided that "any dispute which might arise during the term of the contract ... shall be submitted to binding arbitration under the rules then prevailing of the American Arbitration Association." Joint Appendix at 44 [hereinafter JA]. The agreement is governed by the laws of the Commonwealth of Puerto Rico, see JA 44, but is silent as to the site of arbitration.
 
 
 3
 Prior to entering into the SSS agreement, MSGI had contracted on January 1, 1985, to purchase the software for the SSS system from Advanced Systems Applications, Inc. (ASA). ASA, a Delaware corporation with its principal place of business in Illinois, develops and licenses computer software systems for insurance claims processing. This contract provides that "[a]ll disputes under or concerning this Agreement, except disputes involving the termination of this Agreement, shall be settled by binding arbitration in the city of New York, New York, under the then prevailing rules of the American Arbitration Association." JA 113. The contract also provides that its terms are to be governed by the laws of Illinois. JA 113.
 
 
 4
 Each of the two contracts described above is distinct. The only direct contractual links between SSS and ASA relate to the licensing of ASA's software. As an inducement for ASA to enter into an agreement with MSGI, SSS executed a separate letter agreement whereby it agreed to be bound by certain licensing terms of the ASA-MSGI Agreement. See JA 124-25. This letter agreement has no arbitration clause. In addition, once the system becomes operational, both contracts provide that the three parties shall execute a Use License Assignment Agreement pursuant to which MSGI's license to use the ASA software may be assigned to SSS. See JA 43, 104. The Use License Assignment Agreement has an arbitration clause that that is identical to the one in the ASA-MSGI contract. See JA 64, 122.
 
 
 5
 The dispute underlying this litigation began in 1987. Because of various misunderstandings that go to the merits of the case, MSGI stopped making payments due to ASA under the ASA-MSGI agreement. In response, ASA commenced a suit in New York state court seeking a declaration that ASA was entitled to terminate the ASA/MSGI agreement as a result of MSGI's failure to pay. MSGI persuaded the state court to stay the lawsuit pending arbitration. On November 20, 1987, MSGI commenced separate arbitration proceedings against SSS and ASA and requested that the American Arbitration Association (AAA) consolidate the two proceedings and direct that the hearings be held in New York.[1]
 
 
 6
 SSS responded on December 8, 1987, by filing the instant lawsuit in the United States District Court for the District of Puerto Rico, seeking an order under section 19 of the Federal Arbitration Act, 9 U.S.C. Sec. 4, compelling the arbitration of its contractual dispute with MSGI in the District of Puerto Rico. SSS simultaneously requested the AAA to stay the arbitration pending the federal court action.[2] On March 2, 1988, MSGI filed a counterclaim against SSS and a third party complaint against ASA, seeking an order consolidating the separate arbitrations and directing that the consolidated proceeding be conducted in New York City.
 
 
 7
 On March 4, 1988, the AAA decided that the hearings relating to the MGSI-SSS arbitration should be conducted in Puerto Rico. See JA 60. On March 15, 1988, SSS returned to federal court and sought either a voluntary dismissal of the lawsuit with prejudice, or a judgment dismissing the lawsuit as moot because SSS had been granted the relief it sought. SSS also sought to dismiss the counterclaim on the grounds that the court lacked the power to order consolidation under the circumstances of the case. On May 31, 1988, a magistrate entered an initial scheduling conference order designating the motions submitted for resolution, and stating that the parties agreed to have the case resolved without trial. JA 38-40. The parties later consented to have the magistrate decide the case, pursuant to 28 U.S.C. Sec. 636(c).
 
 
 8
 The magistrate issued an opinion on August 8, 1988, 121 F.R.D. 154. He first found that Fed.R.Civ.P. 42(a) and 81(a)(3) gave him the power to order consolidation of arbitration proceedings. JA 154. He then ordered consolidation because the two arbitrations featured a common party and interrelated issues, and because of the possibility of irreparable harm to the common party stemming from conflicting awards in the two proceedings. JA 153.
 
 
 9
 SSS then filed a Motion to Amend the Order and for Additional Findings of Fact. Among other things, SSS argued that the trial court had not indicated where the consolidated arbitration should take place, despite having noted that "the main issue ... at stake [here] is not the enforcement of an arbitration agreement, but instead ... how and where ... arbitration [should] take place." JA 148. In a Supplemental Order dated August 26, 1988, the magistrate explained that he had "set aside" the AAA's choice of locale for the MSGI-SSS arbitration because of the possibility of irreparable harm to MSGI. JA 160. He had left open the locale of the consolidated arbitration "on purpose." JA 161. "Hearings, discovery and any other proceeding may be heard in Puerto Rico concerning the SSS/MSGI contract while the same is being heard in New York concerning the MSGI/ASA agreement. However, we decided to leave this to the AAA and the parties subject to the agreements and their own convenience." JA 161. SSS and ASA appeal from both the Order and the Supplemental Order.[3] They initially argue that the trial court did not have the power to consolidate separate arbitration proceedings because neither the contracts nor the state law governing the contracts authorized the procedure. Alternatively, even if did have the power to consolidate, they argue that the trial court should not have consolidated these particular arbitration proceedings. SSS also argues that the trial court incorrectly set aside the AAA's determination that the SSS-MSGI arbitration should take place in Puerto Rico.
 
 
 10
 The first claim presents an issue that we had specifically reserved on a previous occasion. See New England Energy, Inc. v. Keystone Shipping Co., 855 F.2d 1, 3, 5 n. 4 (1st Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1527, 103 L.Ed.2d 832 (1989). We do not need to resolve this issue here, however, because we conclude that even if the trial court had the power to consolidate arbitration proceedings, it should not have exercised that power in this particular instance. Jurisdictions that recognize a court's power to order consolidation use a straightforward two-part framework to review exercises of that power. See, e.g., Keystone, 855 F.2d at 7; Sociedad Anonima de Navegacion Petrolera v. Compania de Petroleos de Chile, S.A., 634 F.Supp. 805 (S.D.N.Y.1986); In the Matter of the Arbitration between Vigo Steamship Corp. and Marship Corp., 1970 A.M.C. 1376 (N.Y.Ct.App.). The threshold issue is whether the two proceedings involve a common party and common issues of fact or law. Keystone, 855 F.2d at 7; Vigo Steamship, 1970 A.M.C. at 1379. Once this determination is made, the trial court has broad discretion in weighing the costs and benefits of consolidation to decide whether that procedure is appropriate. Keystone, 855 F.2d at 7. A motion for consolidation will usually be granted unless the party opposing it can show "demonstrable prejudice." Lavino Shipping Co. v. Santa Cecilia Co., 1972 A.M.C. 2454, 2456 (S.D.N.Y.).
 
 
 11
 We now apply this framework to the facts of this case. SSS and MSGI argue that the magistrate's finding that the two proceedings involved "interrelated issues," JA 153, is insufficient to satisfy the threshold requirement. They point out that not only does the opinion not identify any interrelated issues, but that it does not even indicate whether the purportedly common issues are factual or legal. Even assuming that the two proceedings involve common questions of fact,[4] we find that the trial court abused its discretion in weighing the costs and benefits of consolidation.
 
 
 12
 The problem with the trial court's analysis is that it undervalues SSS and ASA's interests in the venue of their respective arbitrations with MSGI. ASA's contract with MSGI specifies that any arbitration between the two parties will take place in New York. SSS' contract with MSGI does not specify a venue for arbitration, but simply states that all disputes arising out of the contract will be submitted to binding arbitration "under the rules then prevailing of the American Arbitration Association." JA 44. Rule 11 of the Commercial Arbitration Rules of the American Arbitration Association states that if the parties do not specify the locale for arbitration, the AAA "shall have the power to determine the locale," and its determination will be "final and binding."[5] In this case, the AAA determined that the SSS-MSGI arbitration should take place in Puerto Rico. JA 60. The AAA's determination is binding on the parties because they incorporated its rules into their contract.[6] See M. Domke, Domke on Commercial Arbitration Sec. 16.02. Even though SSS did not specify an arbitration venue in the contract, there is no reason why it cannot defend the venue as determined under the terms of the contract.
 
 
 13
 The trial court determined that the irreparable harm resulting from the possibility of conflicting awards justified consolidation. We believe this determination amounted to an abuse of discretion. Ordering consolidation would obviously force either SSS or ASA to forego the arbitration locale mandated by their contracts.[7] It is not hard to imagine why SSS, a corporation that does all its business in Puerto Rico, would prefer that its arbitration with MSGI be conducted in Puerto Rico. See M. Domke, supra, Sec. 16.01 (describing practical advantages and substantive implications of arbitration venue choice). SSS would obviously be prejudiced if the arbitration were conducted elsewhere. MSGI has not justified the forfeiture of SSS' contractual right. See Texas San Juan Oil Corp. v. An-Son Offshore Drilling Co., 198 F.Supp. 284, 286 (S.D.N.Y.1961). It is true that separate arbitrations carry the risk of inconsistent awards against MSGI, and may also be duplicative for MSGI. But MSGI has nobody but itself to blame for this predicament. See In the Matter of the Arbitration between the Egyptian Co. for Maritime Transport, et al., and Hamlet Shipping Co., Inc., 1982 A.M.C. 874, 877 (S.D.N.Y.). It should have foreseen the problem and negotiated for a contractual clause authorizing consolidated arbitration. Instead of doing that, MSGI's contracts with SSS and ASA are governed by the laws of different states, have arbitration clauses of sharply divergent scope, and do not specify that arbitration shall take place in the same location. There is a limit to the extent that a court can remedy the carelessness of a contracting party. We hold that the trial court exceeded that limit in this case.
 
 
 14
 The consolidation order is reversed. The order setting aside the locale determination by the American Arbitration Association for the SSS-MSGI arbitration is reversed. Costs to appellants.
 
 
 
 *
 Of the District of Massachusetts, sitting by designation
 
 
 [1]
 The AAA, pursuant to longstanding policy, informed MSGI that it would not consolidate separate arbitrations without the consent of all the parties involved. It mentioned, however, that it would respect a court order compelling consolidation. See JA 53-54
 
 
 [2]
 Later, on February 18, 1988, SSS withdrew its request for a stay of the proceedings. JA 51
 
 
 [3]
 Appellate jurisdiction is based on 28 U.S.C. Sec. 1291. We regard as final orders resulting from independent proceedings brought (a) to compel arbitration under Sec. 4 of the Federal Arbitration Act, see Hartford Financial Systems, Inc. v. Florida Software Services, Inc., 712 F.2d 724, 728 (1st Cir.1983), and (b) to compel consolidation of separate arbitration proceedings, see, e.g., New England Energy, Inc. v. Keystone Shipping Co., 855 F.2d 1 (1st Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1527, 103 L.Ed.2d 832 (1989); see also Weyerhauser Co. v. Western Seas Shipping Co., 743 F.2d 635, 636 (9th Cir.), cert. denied, 469 U.S. 1061, 105 S.Ct. 544, 83 L.Ed.2d 431 (1984). Neither Limbach Co. v. Gevyn Construction Corp., 544 F.2d 1104, 1107 & n. 5 (1st Cir.1976), cert. denied, 430 U.S. 916, 97 S.Ct. 1328, 51 L.Ed.2d 594 (1977), nor New England Power Co. v. Asiatic Petroleum Corp., 456 F.2d 183, 188-89 (1st Cir.1972), are to the contrary because they both involve orders staying ongoing judicial proceedings pending arbitration
 
 
 [4]
 MSGI has not explained how the two proceedings present common questions of law given that each one is governed by the substantive law of a different jurisdiction
 
 
 [5]
 The Commercial Arbitration Rules of the American Arbitration Association are reproduced in the Addendum to the Brief of Appellant Seguros de Servicio de Salud de Puerto Rico, Inc
 
 
 [6]
 The trial court decided to "set aside" the AAA's locale determination because of the irreparable injury that would result from the possibility of inconsistent awards. JA 160. We agree that the fact that the AAA's locale determination is "final and binding" does not preclude "a limited inquiry into whether that determination was made in accordance with a minimum standard of fair dealing." Aerojet-General Corp. v. American Arbitration Association, 478 F.2d 248, 251 (9th Cir.1973). MSGI has not alleged and the trial court did not find that the AAA's locale determination was rendered in bad faith or in " 'manifest disregard of the law.' " Aerojet, 478 F.2d at 252 (quoting Trafalgar Shipping Co. v. International Milling Co., 401 F.2d 568, 572 (2d Cir.1968)). Aside from consolidation, which we address below, there was no justification for overturning the AAA's locale determination
 
 
 [7]
 MSGI argues that "[c]onsolidation would not necessarily require SSS to arbitrate completely in New York, nor ASA to arbitrate in Puerto Rico," Brief of Appellee McAuto Systems Group, Inc. at 34, but does not explain or support this conjecture